WIGGINTON, Judge.
Appellant sued appellee for damages sustained as a result of injuries proximately caused by the alleged negligent act of ap-pellee. From the final judgment entered upon a verdict directed in favor of appellee at the close of appellant’s evidence, this appeal is taken.
*58 On the critical date in question appellant was employed by one Herbert Cowart as a driver of a fertilizer spreader truck. On that day appellant and another Cowart employee were scheduled to spread lime on the field of a dairy farm in Putnam County. Transportation of the lime purchased by appellant’s employer for application on the field had been contracted by appellee whose obligation it was to transport the lime from the plant to the farm where it was to be spread by appellant and his co-worker. Appellee’s transportation units consisted of a tractor and a trailer which was eleven feet high and seven feet ten inches in width. Each trailer contained two hoppers, each of which held twelve and one-half tons of lime and were emptied through an opening underneath each hopper. The lime passed through the opening onto a conveyor belt which carried it from the bottom of the trailer to the top of the fertilizer spreader trucks parked alongside. Appellee’s units were equipped with an iron bar which was used to open the gate underneath the hoppers and for striking the underside of the hopper in order to create a flow of lime onto the conveyor belt. The units also carried an uninsulated prod pole approximately eight feet in length and made of one-half inch galvanized pipe. This prod pole was inserted in the lime at the top of the hopper and forced downward into the opening beneath the hopper in order to loosen the material by creating a hole through which the material would commence to flow onto the conveyor belt.
Over a two-year period preceding the critical date in question appellant had assisted appellee’s drivers in unloading its units by climbing on top of a trailer and manipulating the prod pole down through the lime while appellee’s driver positioned himself beneath the hopper against which he beat the iron bar in order to start the flow of lime onto the conveyor belt. Customarily, the unloading operation was accomplished by two men working together as herein described, and appellant had assisted appellee’s drivers over the period of time hereinabove mentioned at least ninety per cent of the time in unloading from seventy-five to one hundred units transporting lime to the various fields and pastures where appellant was engaged. In some instances the assistance rendered by appellant and his co-workers to the drivers of appellee’s trucks was at the specific request of appellee’s employees, and at other times was rendered without request but in an effort to expedite the loading of their own trucks so as not to delay the work in which they were engaged.
On the day appellant was injured, appel-lee transported a load of lime to the dairy farm for delivery to Cowart’s trucks operated by appellant and his co-worker. Appel-lee’s unit was driven by one Joseph Cherry whom appellant had never before known, and with whom he had had no previous dealings. On arriving at a point opposite the field on which the lime was to be applied, Cherry drove his unit near the ditch on the right-hand side of the road and stopped it directly beneath a low-hanging high tension electric power line. Cherry observed the power line and discussed the danger which it created with one of appellant’s coworkers, but did not mention to appellant his apprehension, nor the proximity of the power line to the top of the trailer. Although the weather was clear and the existence of the power line was open and obvious on even the most casual observation, appellant failed to notice the wire and was not conscious of its presence in close proximity to the top of the trailer. Three truckloads of lime were unloaded from the rear hopper of appellee’s unit with one load going into appellant’s truck and the remaining two loads into the truck of appellant’s fellow employee. As each truck was loaded it proceeded to the field where the lime was applied after which it returned to appellee’s unit for reloading. During the course of unloading the rear hopper of the unit, Cherry managed the operation by himself without assistance from either appellant or his co-worker being requested or rendered. When appellant completed distribution of *59 his load of lime and returned to appellee’s unit, he parked his truck alongside the unit and beneath the conveyor belt for reloading from the front hopper. Appellant observed Cherry on the ground beneath the trailer beating against the side of the hopper with the metal bar. Realizing that Cherry was having difficulty in getting the flow of lime started from the hopper onto the conveyor belt, appellant, without Cherry’s knowledge, voluntarily left the cab of his truck and climbed to the top of the trailer for the purpose of lending assistance in the unloading operation. He removed the long metal prod from its holder on the trailer and in doing so raised the top end of the pole over his head preliminary to inserting the bottom end into the lime so it could be pushed downward through the material into the opening at the bottom of the hopper. As appellant raised the metal pole above his head, the top end came in contact with the high tension electric power line overhead. Contact between the pole and power line sent an electric charge through appellant’s body throwing him to the ground inflicting serious injuries and causing the damages sued for.
It is the theory of appellant’s complaint that appellee was guilty of negligence in parking its unit in close proximity to the high tension electric power line knowing of the dangerous condition created thereby in view of the customary unloading operation to be conducted from the top of the unit; or that appellee permitted appellant to assist in unloading the unit and negligently failed to warn him of the dangerous condition existing by reason of the proximity of the top of the unit to the low-hanging high tension power line; or, that appellee negligently maintained its unit by failing to install thereon equipment which would have made the unloading operation reasonably safe for appellant and those rendering assistance to appellee’s employees. Appellee interposed the defenses of general denial, contributory negligence, and assumption of risk. It was on the issues thus made by the pleadings that the court directed a verdict in favor of appellee at the close of appellant’s evidence.
The motion for directed verdict interposed by appellee was upon the grounds that from the undisputed evidence it affirmatively appeared as a matter of law that (1) appellee was not guilty of any act of negligence; (2) appellant was guilty of contributory negligence; and, (3) appellant assumed the risk of the danger which proximately caused his injuries. The trial court did not specify the ground or grounds upon which the motion was granted so appellant argues each of the grounds in an endeavor to demonstrate reversible error.
Appellant first contends that a jury question was made by the evidence and the permissible inferences deducible therefrom with respect to the issue of appellee’s negligence. Appellant points to the uncontra-dicted fact that appellee’s employee positioned his unit on the side of the road directly beneath a low-hanging high tension electric power line knowing that by doing so it created a danger to anyone engaged in the unloading operation while manipulating the long metal pole from the top of the trailer; that with knowledge of such dangerous condition it became the duty of appellee to warn appellant of the danger thus created in view of the customary practice of appellant and his co-workers of assisting the drivers of appellee’s units in unloading the material into the spreader trucks; that appellant did not see nor was he aware of the proximity of the power line to the top of the trailer when he climbed upon it for the purpose of lending assistance to appellee’s employee; that by failing to warn appellant of the danger created by the proximity of the trailer to the overhead power line, appellee breached a duty owed appellant, which breach proximately caused the damages sustained.
Appellant contends that he occupied the status of a business invitee when he boarded appellee’s trailer for the purpose of rendering assistance in unloading the *60 lime in accordance with the practice and custom which had been established between the parties over the preceding two years. In the Catholic Church case the Supreme Court, speaking through Mr. Justice O’Con-nell, prescribed the test to be applied in determining whether a person is an invitee or a licensee as follows:
“ ‘In determining this question the general test is whether the injured person, at the time of the injury, had present business relations with the owner of the premises which would render his presence of mutual aid to both, or whether his presence on the premises was for his own convenience, or on business with others than the owner of the premises. In the absence of some relation which inures to the mutual benefit of the two, or to that of the owner, no invitation can be implied, and the injured person must be regarded as a mere licensee.’ ” [1]
If we assume, without deciding, that appellant occupied the status of business invitee when he climbed aboard appellee’s trailer immediately prior to the time of his injury, we next proceed to a determination as to the exact duty owed appellant by appellee under the circumstances shown by the evidence in this case. In the Catholic Church case, supra, the Supreme Court held :
“A greater duty is owed to an invitee than to either of the other class of persons above mentioned (trespassers and licensees). The owner or occupant owes an invitee the duty of keeping the premises in a reasonably safe condition, and, as plaintiff contends, also to guard against subjecting such person to dangers of which the owner or occupant is cognizant or might reasonably have foreseen. * * * ” [2]
In the case of Quinnelly v. Southern Maid Syrup Company the Second District Court of Appeal, in defining the duty owed a business invitee by the owner of premises, held:
“Our Courts have consistently held that where the plaintiff was an employee-invitee or a business visitor-invitee it was the duty of the defendant to use reasonable care in maintaining the premises in a reasonably safe condition and to have given the plaintiff timely notice and warning of latent and concealed perils, known to the defendant or which by the exercise of due care should have been known to him,, and which were not known by plaintiff or which, by the exercise of due care, could not have been know to him- * * * An ever underlying principle in all of these cases, before a defendant is held liable, is a showing by proper allegations of superior knowledge-of the danger on the defendant’s part.” [3]'
In the case sub judice there is no conflict in the evidence with respect to the-fact that the high tension electric power line which caused appellant’s injuries was open and obvious upon the most casual observation. Appellant had the same opportunity of acquiring knowledge as to the existence of the power line, and its proximity to the trailer, as did appellee’s driver, Cherry. The danger created while positioning the trailer beneath the power line-before proceeding with the unloading operation was not a latent or concealed peril known only to appellee, but by the exercise of due care should and would have been-known by appellant. The dangerous condition was not one of which appellee had a superior knowledge.
In the Quinnelly case, supra, plaintiff’s complaint alleged that he was a business-invitee on the premises of the defendant *61 when a crane which he was operating came in contact with a high tension electric power line, which power line defendant had caused to be constructed and erected on the premises; that defendant permitted the electric line to he energized although such was not necessary at the time; that knowing of the energized condition of the power line, defendant breached a duty owed plaintiff by failing to warn him that the electric wires were energized, and failing to provide plaintiff with a safe place in which to work by requiring that the power line be de-energized during the course of such work; that as a result of the boom on the crane coming in contact with the high tension electric line, plaintiff received serious electrical burns and shock for which he claimed damages. In affirming the action of the trial court in dismissing the complaint for failing to state a cause of action, the Second District Court of Appeal said:
“ * * * There is no allegation showing a breach of a duty owed the plaintiff. The allegations do not show any injuries as a proximate result of any conduct of the defendant. The instrumentality actually causing the injury was under the exclusive control of third persons. It was not the duty of the landowner to furnish the plaintiff a safe place to work, but to use due care in maintaining his premises. Notice or warning is not required where the dangerous condition is open and obvious to a person who is exercising reasonable care for his own safety. * * * The existence of an open and obvious power line is not an unsafe condition in and of itself. The defendant landowner was not engaged in a dangerous occupation; neither was the plaintiff. The trial court properly dis.missed the second amended complaint. * * * ” [4]
On the basis of the authorities herein-above cited we conclude that the record before us contains no evidence from which the jury could have lawfully concluded that appellee breached a duty owed appellant or was guilty of any act of negligence which proximately caused appellant’s injuries. Having reached this conclusion regarding the issue of negligence, we deem it unnecessary to discuss the other points raised by appellant regarding the defenses of contributory negligence and assumption of risk. Neither of these defenses becomes material unless it is first established that appellee has been guilty of an act of negligence which contributed in part to the injuries suffered by appellant. For the reasons herein mentioned we conclude that the trial court did not err in directing, a verdict in favor of appellee at the close of appellant’s evidence. The judgment appealed is accordingly affirmed.
STURGIS, Chief Judge, and CARROLL,. DONALD K., J., concur.

. McNulty et al. v. Hurley, (Fla.1957) 97 So.2d 185, 188.

. Id. at 187.

.Quinnelly v. Southern Maid Syrup Company, Inc., (Fla.App.1964) 164 So.2d 240-242.

. Ibid.